## GINSBURG v. AUGUST.

1. REFORMATION OF INSTRUMENTS—CONTRACTS.

Where contract for purchase of land by plaintiff provided for deductions for stone furnished by him, and it was understood by all parties that stone was to be furnished by corporations controlled by plaintiff, who was not in business personally, contract was properly reformed to so provide.

2. VENDOR AND PURCHASER—CREDITS ON CONTRACT.

Where contract for purchase of land provided that vendee was to have credit thereon for stone delivered to vendor or another builder, vendee was properly given credit for stone furnished to such other builder, although vendor had no interest in undertaking and did not authorize order.

3. SAME—STONE MANUFACTURED FOR PARTICULAR JOB.

Where said stone was manufactured for particular job and was junked when delivery was refused by defendant because of his inability to finance building, plaintiff was properly allowed credit therefor on said contract.

Appeal from Wayne; Dingeman (Harry J.), J. Submitted January 5, 1932. (Docket No. 8, Calendar No. 35,635.) Decided March 2, 1932.

Bill by John J. Ginsburg against Isaac August and others for reformation of a contract and to enjoin an action at law. Decree for plaintiff. Defendants appeal. Affirmed.

*Butzel, Levin & Winston* (*Clark, Klein, Ferris & Cook,* of counsel), for plaintiff.

*Finkelston, Lovejoy & Kaplan* (*Henry Glicman,* of counsel), for defendants.

NORTH, J. For a number of years plaintiff was engaged in the city of Detroit in the manufacture and sale of artificial stone and also in the sale of limestone for building purposes. In carrying on this business, he caused to be incorporated under Michigan law the Peninsular Stone Company and the Acme Cut Stone Company. Plaintiff owned 98 per cent. of the stock in each company, and furnished all the capital. The remaining shares were held by others for the purpose of organization and operation. The defendants Isaac August and Jacob Shevitz were jointly interested in building projects in the city of Detroit, and plaintiff desired to furnish the building materials in his line. He seems to have been a close acquaintance of both August and Shevitz for a number of years, and for a long time had sold them stone for their building operations. In January, 1926, plaintiff purchased from Mr. August and his wife a piece of property, and as part of the purchase price he gave them his written obligation to pay $19,121, reading in part as follows:

"I, the undersigned, owe them the sum of nineteen thousand one hundred twenty-one ($19,121) dollars, which I agree to pay within three years with

interest at six per cent. per annum, *with exceptions of deductions of stone that is contracted for and delivered by me, the undersigned, to either Isaac August or Jacob Shevitz, from time to time, as said stone is delivered."*

Thereafter plaintiff sold and delivered through the Peninsular Stone Company on August's account stone to the amount of $9,320. He claims he also sold through the Peninsular Stone Company to Shevitz stone to the amount of $10,200. Plaintiff contended that these transactions canceled his written obligation; but August denied that plaintiff was entitled to credit for the $10,200 of materials which plaintiff claims he sold to and manufactured for Shevitz. Suit was started by August against Ginsburg to enforce collection of the balance claimed to be due on plaintiff's written obligation. Thereupon plaintiff filed the bill of complaint herein and sought to reform the above-quoted instrument on the ground of mutual mistake, and to enjoin further prosecution of August's suit at law.

One of the objections urged by August to the credits claimed by plaintiff was that the written instrument covered only stone contracted for and delivered by Ginsburg, whereas credit was claimed for stone delivered by the Peninsular Stone Company. It is plaintiff's claim that both parties contemplated credit of stone furnished by either of the corporations; that in the first instance it was planned to give August the note of the Peninsular Stone Company, but instead the personal note of plaintiff was given. Plaintiff also claims that at the time August knew plaintiff was not carrying on this line of business individually but instead through the corporations. The reformation sought was to change

the portion of the written agreement above quoted in italics so it would read:

"With the exception of deductions for the value of stone that is now or shall hereafter be contracted for with the Peninsular Stone Company or Acme Cut Stone Company, by Isaac August or Jacob Shevitz, and delivered by either of said stone companies to either or both Isaac August and Jacob Shevitz."

The reformation sought was granted in the circuit court, and it was further decreed "that the said written instrument, as reformed, be and the same is hereby declared to have been paid in full." The defendants August and Shevitz have appealed.

The record presents solely questions of fact. Appellants' first contention is that appellee's obligation of January 19, 1926, should not be reformed, and that credit should be allowed Ginsburg only for stone furnished by him personally, but not for stone furnished by the corporations. This contention is without merit. From all the circumstances in the record it conclusively appears that both August and Ginsburg on January 19, 1926, had in mind crediting on the obligation materials furnished by plaintiff's corporations; $5,600 of the purchase price of the real estate bought by Ginsburg was paid by the surrender of that amount of August's promissory notes given for materials furnished to him or Shevitz by the corporations, rather than by Ginsburg personally. The $9,320 of materials which August admitted were justly chargeable to him and allowed as credits against Ginsburg's obligation were materials furnished by the corporation and not by Ginsburg personally. Other facts of similar import appear in the record, but we think it unnecessary to review them. Plaintiff as an individual was not in

the business of manufacturing or selling stone and this fact was well known to August. The decree reforming plaintiff's agreement of January 19, 1926, is abundantly sustained by the record.

Appellants contest two items of credit allowed to appellee amounting to $10,200. These items were incident to two contracts for stone signed by Shevitz but not signed or okehed by August. One order amounting to $7,000 was in connection with the erection of a building at the northwest corner of Fullerton and Lawton avenues; the other amounting to $10,300 was for a 54-apartment building at the southwest corner of Woodward and Puritan avenues. Except as hereinafter noted these materials were not delivered by plaintiff. He testified he was prevented from delivering the stone which he actually manufactured for these orders; that he kept these stone at his place of business for substantially two years; that they were manufactured according to special drawings and specifications, and, therefore, were not marketable for general building purposes; and that finally these stone were hauled to a dump yard. Further plaintiff testified:

"All of the stock on Exhibit 10 was manufactured and cured and ready for delivery, but the building was stopped on account of some reconstruction and we were ordered not to deliver the stone. Mr. I. August and Mr. J. Shevitz, both of them, ordered me not to deliver the stone on the corner of Fullerton and Lawton avenues in accordance with Exhibit 10. We were to start work immediately. It was a rush job. The basement was excavated, and that due bill (agreement, January 19, 1926) was given with this job in mind. The real estate deal was taken after that contract was signed, and that was going to be in payment of that particular job. This contract was signed January 6th, and this other con-

tract for the sale of this real estate, or the due bill, was executed pursuant to this agreement as to how I was going to get paid. They were desirous of going on right away. We immediately went ahead and manufactured this stone, all of the stone for that job. We didn't deliver the stone to the job because after the basement was excavated an injunction was. put on by the court to prevent them from going ahead. There was no going ahead with us. We had everything completed except the .delivery. * * * I went down and saw Mr. August. They told me not to worry about it, they would have it all taken off and to hold the stone for them. I saw them a number of times after that, in his office anteroom. Mr. August and Mr. Shevitz both. They had their offices together. It was his office and they had two private offices. He told me I had nothing to worry about. The stone was paid for on the building and they were going to go ahead as soon as they could get the injunction lifted. * * * Before I did that I talked to Mr. August dozens of times. I told him I was going to haul it out and dump it. He said it was all right to haul it to a dump. * * * He said we were covered by the due bill. He never denied this was money he owed. I didn't know a thing about it until they started this suit some three years after the building was stopped.''

While the contract price on one job was $7,000, plaintiff, because of saving the expense of delivery, and a mistake in his own accounts, asked credit for only $5,000. This was the amount allowed by the trial judge. On the other job the contract price of the stone was $10,300. At an early stage of the operation construction was wholly abandoned because of inability to .finance the undertaking. Plaintiff testified that approximately 43 per cent. of the contract quantity was manufactured. Substantially 400 cubic feet of the stone was delivered, but the

balance was not delivered and was subsequently junked because the building was not constructed and delivery not accepted by appellants. The credit asked by plaintiff for stone on this job and allowed by the circuit judge was $5,200.

Appellants stress the claim that August should not be charged for stone furnished on either of these two jobs because he had no interest in either property or undertaking, and because he neither signed nor okehed an order for these stone. In this connection it should be noted that August accepted the January 19, 1926, obligation of plaintiff which recited he was to have credit for stone furnished "to either Isaac August or Jacob Shevitz," and in a preliminary agreement (January 13, 1926) incident to this same transaction and signed by August it was recited:

"Second party may deduct at any time, from time to time, stone purchased from him, in such amounts as they become due from various jobs that may be given him."

Further August admits that plaintiff is entitled to credit for stone furnished to Shevitz on a Hastings street job notwithstanding August had no interest whatever in the undertaking. The manner of conducting their business at the time as between August and Shevitz is convincing that it was understood and agreed that materials furnished to the latter were to be credited on appellee's January 19, 1926, obligation. The further claim is made by appellants that the undelivered stone were not manufactured as claimed by appellee. We have already quoted too freely from the record. In this particular it is sufficient to notice that plaintiff's testimony is direct and positive that the stone were

manufactured for which he now seeks credit. In this he is corroborated by the testimony of his brother Marcus Ginsburg who was associated with appellee in business. Also office and shop records bearing upon this phase of the case were introduced in evidence. The circuit judge found in accordance with appellee's contention and we think the record supports the finding.

The items which appellee claims he is entitled to have credited or offset against his obligation of January 19, 1926, total $19,520, which is in excess of the amount that would otherwise be due to August upon Ginsburg's note; but appellee does not ask for a judgment in his favor for this balance. The decree of the circuit court reforming the Ginsburg obligation of January 19, 1926, and holding the same fully paid and satisfied, is affirmed, with costs to appellee.

CLARK, C. J., and McDONALD, POTTER, SHARPE, FEAD, and WIEST, JJ., concurred. BUTZEL, J., did not sit.